UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter  13 |
| Kevin Adrien, | ) | |
| | ) | Case number 17-64878-crm |
| Debtor | ) | |
| | ) | |
| AGPM Georgia, LLC as agent for | ) | |
| Ridgewalk Apartments | ) | |
| Movant/Creditor | ) | |
| v. | ) | Notice of Hearing |
| | ) | |
| Kevin Adrien, Debtor; Nancy J. | ) | |
| Whaley, Trustee | ) | |
| | ) | |
| Respondents | ) | |

Notice Of Hearing

PLEASE TAKE NOTICE that Movant has filed a Motion for Relief from

Stay and related papers with the Court seeking an order granting relief from the

automatic bankruptcy stay.

**PLEASE TAKE FURTHER NOTICE that the Court will hold a**

**hearing on the Motion in Courtroom 1203, United States Courthouse, 75 Ted**

1

**Turner Drive SW (formerly Spring Street SW), Atlanta, Georgia 30303 at 9:30 a.m. on Tuesday, September 26, 2017.**

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.

Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive SW (formerly Spring Street SW), Atlanta, Georgia 30303. *You must also mail a copy of your response to the undersigned at the address stated below.* If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting relief.

2

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

This notice is sent by the undersigned pursuant to 11 U.S.C. § 362 noticing requirements.

Dated: September 10, 2017

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: /s/Elizabeth M. Cruikshank

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

3

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter  13 |
| Kevin Adrien, | ) | |
| | ) | Case number 17-64878-crm |
| Debtor | ) | |
| | ) | |
| AGPM Georgia, LLC as agent for | ) | |
| Ridgewalk Apartments | ) | |
| Movant/Creditor | ) | |
| v. | ) | Contested Matter |
| | ) | |
| Kevin Adrien, Debtor; Nancy J. | ) | |
| Whaley, Trustee | ) | |
| | ) | |
| Respondents | ) | |

Motion for Relief from Automatic Stay

Movant AGPM, LLC as agent for Ridgewalk Apartments ("Movant") comes

before this Honorable Court and brings this Motion for Relief from Stay by and

through undersigned counsel pursuant to 11 U.S.C. § 362, 11 U.S.C. § 363, and

Federal Rule of Bankruptcy Procedure 4001 (a) (1) by showing this Honorable

Court the following:

4

Basis for the Motion

1. Movant seeks relief from existing stay for the purpose of dispossessing Debtor of a residential rental property located at: 3211 Elena Way, Woodstock, GA 30188 ("Property").

2. Property is in Cherokee County, Georgia and a dispossessory would be subject to the jurisdiction of the Courts of that county.

    a. The Movant filed a Dispossessory Action in Cherokee County Magistrate Court prior to the filing of this Bankruptcy, Case No. 17MCE3588.

    b. The Dispossessory is stayed pending the outcome of this case or an order lifting the stay.

3. Movant owns and/or manages the Property. Debtor is a tenant pursuant to a residential lease agreement executed on Monday, May 01, 2017. The agreement provides Debtor with a possessory interest and stipulates that Debtor's monthly rent is $1,003.00 (one thousand three and 00/100 dollars). Debtor also pays monthly fees amounting to: a late fee of 10% charged each month during which Debtor's rent payment is received after the 3rd day of the month . See Lease Agreement, attached; See Ledger, attached; See Rent and Fees Owed Chart, attached.

5

4. Debtor continues to reside in the Property and has failed to provide adequate assurance of future performance under the terms of the Lease Agreement..

5. Debtor filed a petition under Chapter 13 of the Bankruptcy Code on Friday, August 25, 2017.

6. O.C.G.A. § 44-7-54 (a) (1) provides that  where the issue of the right of possession cannot be finally determined within two weeks from the date of service of the copy of the summons and the copy of the affidavit, the tenant shall be required to pay into the registry of the trial court: "All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease which become due after the issuance of the dispossessory warrant, said rent and utility payments to be paid as such become due."

7. Because Tenant-Debtor filed the instant bankruptcy case, Landlord's ability to collect rent pursuant to O.C.G.A. § 44-7-54 and all other sections of applicable Georgia law has been stayed.

8. Debtor has failed to pay rent, late fees, and all other fees associated with the lease agreement, either to Movant or into the Registry of the Court, for August or September, 2017. Debtor is, therefore, in default of the lease and the provisions of 11 U.S.C. § 365 do apply.

6

Movant's Requests

9. Pursuant to 11 U.S.C. § 362, Movant may be stayed from the commencement or continuation of any court or other proceeding against Debtor to recover possession of the rental Property.

10. Movant has, since the filing of the Bankruptcy petition, incurred additional costs for attorneys, rent, and all other expenses associated with Debtor's occupancy of the property. Continuation of the automatic bankruptcy stay will harm Movant.

11. Movant is entitled to recover post-filing rent on the first of each month, plus late fees (if rent payments are late) and all other outstanding post-filing fees specified in the lease agreement.

12. Debtor will owe post-petition rent and fees beginning August, 2017. Debtor also owes a pre-petition amount of $1,154.44 to Movant. See Rent and Fees Owed Chart, attached.

13. Movant seeks possession of the property and unpaid post-filing rent and fees from the Debtor.

14. Movant cannot be adequately protected in the Bankruptcy matter, thus Movant should be granted relief from the Stay under Section 362(d) of the United States Bankruptcy Code.

7

15.Since this is the second bankruptcy filing in under one year, pursuant to

Section 362(c)(3)(a), the Stay is only in effect for a period of 30 days.

Prayer For Relief

WHEREFORE, Movant respectfully requests that the Court issue an order

granting the following:

a)      That Movant be granted an Order lifting the automatic stay and further

allows Movant to proceed under applicable non-bankruptcy law to enforce its

remedies, specifically to allow the Courts of DeKalb County, State of Georgia to

move forward with a dispossessory action against Debtor including a money

judgment against Debtor for unpaid post-filing rent and fees;

b)      For reasonable attorney's fees associated with the cost of bringing this

Request for Relief from Stay;

c)      To the extent provided by 11 U.S.C. § 109 (g), should Debtor move to

voluntarily dismiss the current bankruptcy case, that Debtor be enjoined from

refiling within 180 days, and/or refiling in such manner as to prevent Movant from

proceeding with the dispossessory action for possession;

d)      That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived;

e)      Alternatively, if relief from stay is not granted, Movant respectfully requests

the Court to order just and proper protection for its interests in the subject property

8

including, but not limited to, payment of post-filing rent into the registry of the

Court and/or ordering Debtor to strictly comply with the terms of the rental lease

Agreement.

Respectfully submitted on Sunday, September 10, 2017.
Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: /s/Elizabeth M. Cruikshank

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

Distribution List

The materials associated with the foregoing Motion for Relief from

Automatic Stay (including the attached Notice of Hearing) are to be distributed to

the following persons today, Sunday, September 10, 2017:

| | |
|---|---|
| *Debtor :* | *Debtor's Attorney*: |
| Kevin Adrien | Howard P. Slomka |
| 3211 Elena Way | Slipakoff & Slomka, P.C. |
| Woodstock, GA 30188 | Overlook III – Suite 1700 |
| | 2859 Paces Ferry Rd, SE |
| | Atlanta, GA 30339 |
| | |
| *Trustee*: | *Movant's Attorney*: |
| Nancy J. Whaley | Elizabeth M. Cruikshank, Esq. |
| Standing Chapter 13 Trustee | Cruikshank Ersin, LLC |
| Suite 120 | 6065 Roswell Road, Suite 680 |
| 303 Peachtree Center Avenue | Atlanta, Georgia 30328 |
| Atlanta, Georgia 30303 | |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter  13 |
| Kevin Adrien, | ) | |
| | ) | Case number 17-64878-crm |
| Debtor | ) | |
| | ) | |
| AGPM Georgia, LLC as agent for | ) | |
| Ridgewalk Apartments | ) | |
| Movant/Creditor | ) | |
| v. | ) | Contested Matter |
| | ) | |
| Kevin Adrien, Debtor; Nancy J. | ) | |
| Whaley, Trustee | ) | |
| | ) | |
| Respondents | ) | |

Certificate of Service

This is to certify that I, the undersigned attorney Elizabeth M. Cruikshank,
have served Debtor and all parties named on the Distribution List with the
foregoing Motion for Relief from Automatic Stay (including the attached and
completed Notice of Hearing as well as all attached exhibits) by properly filing
same with the Bankruptcy Court for the Northern District of Georgia using the
CM/ECF system (which will deliver electronic notice to certain parties) and by
depositing a true and accurate copy of same in the U. S. Mail, with proper postage
affixed and addressed as follows:

11

*Debtor :*
Kevin Adrien
3211 Elena Way
Woodstock, GA 30188

*Debtor's Attorney*:
Howard P. Slomka
Slipakoff & Slomka, P.C.
Overlook III – Suite 1700
2859 Paces Ferry Rd, SE
Atlanta, GA 30339

*Trustee*:
Nancy J. Whaley
Standing Chapter 13 Trustee
Suite 120
303 Peachtree Center Avenue
Atlanta, Georgia 30303

*Movant's Attorney*:
Elizabeth M. Cruikshank, Esq.
Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328

On Sunday, September 10, 2017.

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: /s/Elizabeth M. Cruikshank

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235



Apartment Rental Contract
For Affordable Housing

FOR AAA AND GAA
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

This Apartment Rental Contract is a lease between the Owner of the Apartment Community and the Residents who are leasing the apartment.

The General Provisions of the lease which follow the signatures at the bottom of this page and any separate addenda signed by the parties are incorporated into and become part of this lease. Paragraph numbers on this page correspond to paragraph numbers in the General Provisions.

This rental contract is for: [X] Affordable Housing (Section 8 or LIHTC)   [ ] Market Rate apartment (Conventional)

Lease Date: **May 3, 2017**
Management: **AGPM Georgia, LLC**
      [ ] Owner   [X] Management Co. as Agent for Owner
Apartment Community Name: **Ridgewalk Apartments**
Apartment No.: **3211**
Apartment Address: **1 Elena Way, Woodstock, GA 30188**
Residents/Tenants: **Kevin Adrien**        **Jeslyn Adrien**

Other Occupants of Apartment: **Kevin Adrien Jr**        **Karter Adrien**

Par. 1.    Lease Term: **12** Months and _____ Days
       Beginning Date: **05/01/2017**      Ending Date: **04/30/2018**

Par. 3.    Rent Due Monthly    $ **1003.00**
       Pro Rated Rent Due at Lease Signing $ _____
       Dates of Prorated Rent _____ to _____
       Month to Month Fee    $ _____
       Rent is Payable to **Ridgewalk Apartments**        (Name on Check or Money Order)

Par. 4.    Late Fees and Insufficient Funds Fees
       Date on Which Rent Is Late    **6**
       Amount of Late Fee    $ **0.00**   or   **10** % of Rent
       Per Day Late Fee    $ **0.00** per day after _____ day of the month
       Returned or Insufficient Check Fee [X] Service Fee of $ **50.00**   or [ ] 5% of Amount of Check plus [ ] Bank Service Fee of
       $ _____ [Amount charged by Bank to Management for Charge Back]

Par. 5.    Re-Key Lock Charge    $ **50.00**
       Non-refundable Lease Fee    $ **0.00**
       Security Deposit    $ **0.00**
       Bank Name **Wells Fargo**        (Where Security Deposit Kept)

Par. 6.    How Much Notice Required To Non-Renew Lease Prior To End of Initial Lease Term   **60** Days
       Renewal Period    [X] Month to Month (1 month at a time) Renewal   [ ] Bi-Monthly (2 months at a time) Renewal
       Notice Required to End Renewal Period [X] 30 days to end Month to Month Renewal   [ ] 60 days to end Bi-Monthly Renewal

Par. 7.    Early Termination Option: Amount of Notice Required for Electing Early Termination   **60** Days Written Notice

Par. 9.    Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy
       Name of Managing Agent for Owner   **Alta Ridgewalk, LLC**
       Address of Agent Authorized to
       Manage Apartment Community   **1 Elena Way Wodstock GA 30188**
       Name of Owner or Registered Agent
       Authorized to Receive Notices and
       Lawsuits   **AGPM Georgia, LLC C/O CT Corp.**
       Address of Owner or Registered Agent
       Authorized to Receive Notices and
       Lawsuits   **1201 Peachtree ST NE Atlanta, GA 30361**
       Corporate Name of GREC Licensee   **AGPM Georgia, LLC**
       GREC Corporate License No.   **H-65708**

Par. 17.    Flood Disclosure    [X] Not Applicable   [ ] Apartment has been flooded previously

Par. 35.    Special Stipulations: **IF RENT IS NOT RECEIVED BY THE 10TH OF EACH MONTH, COURT FEES IN THE AMOUNT OF $200 WILL BE CHARGED TO YOUR ACCOUNT. A DISPOSSESSORY WARRANT WITH THE MAGISTRATE COURT WILL BE FILED ON THIS DATE. Additionally all rent must be pain online through Rent Paid Online. Payments will not be accepted in the office.**

Signatures of Parties:
Management
**AGPM Georgia, LLC**

Name of Management

By: _____
Signature of Management Representative Name
As: _____ (Job Title)

Residents

_____ (Resident Signature)
Printed Name of Resident: **Kevin Adrien**

_____ (Resident Signature)
Printed Name of Resident: **Jeslyn Adrien**

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

GENERAL PROVISIONS FOLLOW

General Lease Provisions.

The Owner is the landlord of the property, and the Resident is the tenant. The apartment community is managed for the Owner by its Managing Agent.

The lease is legally effective on the date it is signed, regardless of whether it was signed before or after the Resident moves into the apartment. There is no conditional three day right to rescind or void the contract once it is signed, and the Resident is legally bound to pay all rent, fees, and other charges that come due, regardless of whether the Resident continues to occupy the apartment. The Lease Date is the day on which the lease was signed and became effective as a contract.

The lease is a legally binding contract that creates the relationship of landlord and tenant for the full duration of the lease term at the rental rate stated above. Any addenda signed by the Owner and Resident are also part of this Apartment Rental Contract.

The Owner provides the apartment to the Resident in exchange for payment of monthly rent. The Resident's obligation to pay rent is independent of any other obligation of Landlord in the lease.

Listed above are important terms, conditions, and payment amounts. They are listed at the beginning of the lease to provide the parties with an easy reference. Each of the first page terms correspond to important lease provisions that follow below. Paragraph references on the first page correspond to the paragraph number of the General lease provisions that follow.

Important Information About Ending The Lease and Management's Right to Increase the Rent During Any Extension Period. This lease does not end automatically at the end of the initial lease term. The Resident must give a proper non-renewal notice to end the lease as provided in Par. 6, or the lease will be extended or renewed for an additional period of time stated in Par. 6. The lease continues to renew until the proper non-renewal notice is given. If the lease is renewed or extended, the Resident will be responsible for paying an additional Month-to-Month Fee and may also pay a higher rent than the rent specified in Par. 3, if Management gives notice of the higher rent amount.

The apartment shall only be occupied by Residents and the occupants listed on page 1, and any other occupants not listed above are unauthorized to live in the apartment. A violation of this provision or Paragraph 33 regarding unauthorized occupants is cause for termination of Resident's rental contract or right of occupancy.

Resident acknowledges and agrees that he or she has applied for and intends to live in an apartment that is subject to the laws and regulations pertaining to the Low Income Housing Tax Credit (LIHTC), HOME Program, Section 8 Housing Choice Voucher, Rural Development, Affordable Workforce Housing, Tax-Exempt Bond financing or other state and federal affordable housing programs. The eligibility, qualifications, and participation requirements of each program vary significantly. Resident's eligibility and occupancy in such housing is dependent upon strict compliance with specific income eligibility and other requirements of each program. Within the apartment community, those residents and apartments that are subject to meeting the eligibility, qualifications, and participation in such programs are referred to as "affordable housing" residents and apartments. Other residents and apartments that are not subject to such eligibility, qualifications, and participation in an affordable housing program are referred to as "market rate" residents and apartments; however, management shall have the right to require that all applicants for housing in the apartment community qualify by providing the same information required of affordable housing applicants in order to determine whether the applicant may qualify for an affordable housing apartment.

1.    Term. The initial lease term of the lease is for the number of months and days specified in Par. 1. The initial term of the lease begins and ends at noon on the days specified in Par. 1 but will be automatically renewed on either a month to month or bi-monthly basis as stated in Par. 6. RESIDENT MAY NOT TERMINATE THIS LEASE PRIOR TO THE END OF THE INITIAL TERM EXCEPT IN STRICT COMPLIANCE WITH PARAGRAPH 7 or as otherwise provided by law.

2.    Possession. Rent shall abate until possession is granted to Resident. Resident may void or rescind this lease if possession is not granted within seven (7) days from the start of the lease term. Management is not liable for any delay in possession. Resident shall give Management written notice of his or her election to void or rescind the contract.

3.    Rent. Resident shall pay rent in advance on the 1st day of each month at the management office as provided in Par. 3. The first month's prorated rent shall be due at the time this lease is signed as provided in Par. 3. If this lease is extended or renewed under Paragraph 6 without signing a new lease, Resident shall owe a month-to-month fee in addition to the monthly rent due during any extension or renewal period.

CASH PAYMENTS WILL NOT BE ACCEPTED, AND NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO ACCEPT A CASH PAYMENT UNDER ANY CIRCUMSTANCES. RESIDENT MAY NOT RELY ON ANY STATEMENT MADE TO HIM BY A MANAGEMENT RESPRESENTATIVE THAT CASH WILL BE ACCEPTED.

All rent shall be paid by personal check, cashier's check, or money order. Management shall have the right to establish or provide for payment by credit card, debit card, electronic funds transfer, online payment portal, or designated online payment system and software, but Resident does not have the right to make payments by these means unless specifically authorized by Management. Management shall have the right to designate the specific manner or form of payment that will be accepted, and no other form of payment shall be acceptable than those specified by Management. Checks and money orders shall be made payable to the order of the business entity specified in Par. 3. Third party checks (those which are made payable to someone other than Management) and partial payments are not allowed. All other damages, utilities, fees, or charges owed by Resident and due under this lease are considered to be additional rent.

The amount of rent specified in Par. 3 is the amount due each month unless Management has given the Resident a rental concession or discount from the rent, either in the Special Stipulations to this lease or in a separate addendum. If there are rental concessions granted, the Resident will or may lose them if in default or breach of this lease and will be obligated to pay the full amount of rent specified in Par. 3. If in default or breach of the lease, the Resident may have to repay the rental concessions under certain specified conditions.

Changes in Affordable Housing Resident's Rent Based on the Utility Allowance. Resident agrees that the rent for an affordable housing resident or apartment is based on the maximum gross rent calculated in accordance with IRS regulations, less the applicable utility allowance. The utility allowance for an LIHTC or affordable housing apartment may change during the lease term. If the utility allowance decreases during the lease term, management may, at its sole discretion, increase the rent by the amount of the utility allowance decrease. Any such rent increase will be made in accordance with all applicable state and local laws. Management will notify resident in writing at least 30 days in advance of any such increase.

Changes in Resident's Rent Based on HUD Area Median Gross Income. Resident agrees that the Rent is based on the area median gross income (AMGI) published by the Federal Department of Housing and Urban Development for this geographic area. If the AMGI increases during the lease term, owner may, at its sole discretion, increase the rent to the maximum allowable amount based on the new AMGI. Any such rent increase will be made in accordance with all applicable state and local laws. Owner will notify resident in writing at least 30 days in advance of such increase.

4.    Late Payments and Checks with Insufficient Funds. Time is of the essence. After close of business on the last day of the grace period specified in Par. 4, late fees shall be due in the amount specified.

Resident shall pay Management an insufficient funds check service for each returned or NSF check, plus an additional fee equal to the fee charged to Management by the bank. If no box is checked in Par. 4 that specifies the amount of the service fee, then the insufficient funds service fee is five per cent (5%) of the face amount of the check, plus the fee charged by the bank. At Management's option, all late rent, NSF checks, and future rents due after an

NSF check must be paid by money order or certi...  funds from a bank. The parties agree that bank... rvice, NSF, and late fees are reasonable compensation for delay, administrative costs, and time in collecting past due rent, and that such costs are difficult to estimate accurately.

5.    **Lease Fees & Security Deposit.**  Resident must pay the amounts specified in Par. 5 for re-keying locks, any non-refundable lease fees, or security deposits.  A re-keying lock fee is due for each lock that must be re-keyed if all keys are not returned.  The non-refundable lease fee is not a security deposit, is not refundable, and does not reduce Resident's liability for unpaid rent, damages exceeding normal wear and tear, or other charges that come due under the lease.  Any security deposit will be refunded as provided by law but may be applied to any charges due under this lease.  The deposit will either be protected by a surety bond on file with the Clerk of Superior Court or deposited in the bank specified in Par. 5.  Interest earned on such deposits belongs to Management.

Management shall have the right to apply any security deposit held to money or a debt owed by the Resident to Management.  Management is not restricted to or limited in how the security deposit is applied if money is owed, and the deposit may applied to rent, damages exceeding normal wear and tear, unpaid utilities, or any other fee, charge, or debt owed by Resident.  Management may apply a pet or animal deposit to unpaid rent or damages exceeding normal wear and tear that were not caused by a pet or animal.

Resident shall have no right to use or designate a security deposit as payment of rent or other fees and charges which are due, as provided by O.C.G.A. 44-7-33(b).  Resident agrees to cooperate with Management in scheduling and performing Move-In and Move-Out Inspections and noting any existing damages or objecting to Management's list of damages exceeding normal wear and tear.

6.    **Renewal Term and Notice of Non-Renewal to End the Lease.**

If this rental contract is for an affordable housing apartment, then the lease will not renew on a month-to-month basis and will end on the last day of the lease term stated in Paragraph 1 above unless the resident completes and qualifies through the annual re-certification process and signs a renewal to this lease.

If this rental contract is for a market rate apartment, then either party may non-renew and terminate this lease at the end of the initial term by giving a written non-renewal notice prior to the end of the initial lease term.  If such non-renewal notice is not given, then this lease will be extended as provided in Par. 6 on a  either a Month-to-Month basis (one month at a time) until either party gives a proper 30 day notice; or on a Bi-Monthly basis (two months at a time) until either party gives a proper 60 day notice in writing that terminates the lease.  Unless otherwise allowed by Landlord, the lease shall terminate at the end of a calendar month.

Management shall have the right to increase the rent due in any extension or renewal term by giving written notice at least 15 days prior to the date on which a non-renewal notice must be given in order to end the initial term or any subsequent renewal or extension period.

If not specified in Par. 6, then a 30 day written notice is required to end the initial term or any renewal or extension period as of the end of a calendar month.

Management employees are not authorized to accept a verbal notice of non-renewal or termination from the Resident, and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable.  Resident's non-renewal or termination notice must be in writing, dated, signed, and specify the move-out date.  Resident should confirm Management's receipt of the notice with the authorized signature of a Management representative using Management's notice of intent to vacate form.  Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was  given and received.  If Resident does not obtain a signed receipt of such notice from Management, or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

Management shall have the right to non-renew the rental contract of any market rate resident, either with or without just cause.  Management shall not have the right to non-renew the rental contract of an affordable housing resident without just cause.

7.    **Resident's Early Termination Option.**

If this lease is for an affordable housing apartment, resident acknowledges and agrees that the minimum original lease term for occupancy under an LIHTC program and other affordable housing programs is six (6) months.  Notwithstanding anything to the contrary which is contained in this rental contract or any other addenda which allows the resident the option of an early lease termination, an LIHTC or affordable housing resident shall not have the right to terminate the lease prior to the expiration of six (6) months from the starting date of the lease term stated in Paragraph 1.  An LIHTC or affordable  housing resident who wishes to terminate the lease early after occupying the apartment for six (6) months may give notice of early termination as provided for a market rate apartment below prior to the expiration of six (6) months, but the early termination may not take effect until six (6) months after occupying the apartment under the lease or renewal lease term.  The apartment cannot be used for transient purposes, and an affordable housing resident must occupy the apartment for the first six (6) months of this rental contract.  If eligible to terminate early, an LIHTC or affordable housing resident must do each of the same things required by a market rate resident in order to complete the early termination requirements.

Resident can end all liability for rent under this lease (but not liability for damages exceeding normal wear and tear or liability for unpaid utilities and services) and vacate before the end of the initial lease term stated in Par, 7 only by doing all of the following things required in this paragraph.  If all of the following conditions are not performed, then the lease remains in effect for the full term, and Resident shall be liable for breach of the rental agreement as provided in Paragraph 26.  If Resident skips, abandons, or is evicted from the apartment without complying with this paragraph, then Resident is in default and responsible for rent and liquidated damages (if applicable) as provided under paragraph 26, any other fees or charges due, and all damages and cleaning fees in excess of normal wear and tear.  Management employees are not authorized to make a verbal statement that waives the notice and termination fees, and the Resident has no right to rely on a Management employee's statement that Resident will not have to pay such fees or comply with this provision in order to terminate the lease early.  Any waiver of the notice or fees required under this provision must be in writing, dated, and signed by all parties.  Resident's election to use or not use this provision is purely voluntary.

To end the lease early, Resident MUST do EACH of the following: 1) pay all monies currently due; 2) give written notice in the amount specified in Par. 7 of intent to vacate prior to the first day of the month and to take effect as of the last day of a calendar month; 3) pay all rent due through the notice period preceding the early termination date; 4) pay an additional early termination or lease cancellation fee equal to one month's rent as liquidated  damages; vacate the leased premises on or before the specified termination date, remove all occupants and possessions, and physically hand the keys to a Management representative; and 5) abandon, waive, and release a claim to the return of any security deposit, which shall become Management's.

If the length of the Early Termination notice is not specified in Par. 7 on the first page, then a 30 day written notice is required.  Resident can move-out earlier than the termination date following the notice period in Par. 7, but Resident must turn in all keys, remove all occupants and personal property, pay all rent due through the required non-renewal notice period, pay the one-month termination or lease cancellation fee, and comply with all other requirements.  Keys must be physically handed to a representative of Management and may not be left in the apartment or a night rent drop box.

If Resident elects to exercise his or her right to Early Termination, Resident is not entitled to a refund of any rent, notice or termination fees, or security deposit, even if the apartment is re-let to a new Resident prior to the end of the notice period.  Resident's election to exercise this early termination option either by giving proper notice and paying all sums due or by giving proper notice and signing an agreement to terminate early and pay the sums due at a later date are binding and shall not be reduced or set-off by any money or rent Management receives from re-letting the apartment to a new or subsequent Resident.

Copyright © 10/2015 - Atlanta Apartment Association, Inc, - Form # 1301-AF
All Rights Reserved

Military Transfers and Lease Terminations.  A Resident, including a Resident's spouse who is a service member on active duty or is called to active duty in the regular or reserve component of the U.S. Armed Forces, U.S. Coast Guard, or National Guard, shall have the right to end this Apartment Rental Contract early by giving a 30 day written notice, paying all rent due through the notice date, and providing a copy of the official military orders or written verification signed by the service member's commanding officer or by providing base housing orders as provided in O.C.G.A. Section 44-7-22, if the service member is:

1.   Ordered to federal duty for a period of 90 days or longer;
2.   Receives a permanent change of station orders to move at least 35 miles away from the rental housing;
3.   Is released from active duty after leasing housing and must move 35 miles or more away from the service member's home of record prior to entering active duty;
4.   After entering into this rental agreement, the service member becomes eligible to live in government quarters or the failure to move to government quarters will result in a forfeiture of the service member's basic allowance for housing;
5.   Receives temporary duty orders or temporary change of station orders or state active duty orders for a period exceeding 60 days that is at least 35 miles away from the location of the rental housing; or
6.   Receives orders after signing the lease but before taking possession of the rental housing.

8.   No Assignment/Subletting.   Resident may not sublet or assign the lease.

9.   Disclosure  Notice of Owner or Managing Agent and Equal Housing Opportunity Policy.

The name and address of company or party authorized to manage the apartment community for the owner is specified in Par. 9.  The name and address of the owner or owner's registered agent who is authorized to receive notices and lawsuits against the Landlord is specified in Par. 9.  Lawsuits filed against the owner or Management shall be filed and served as provided by law or as contractually agreed to by Resident.

The Corporate Broker's Name of the Licensed Managing Agent and Broker's license number as required by the rules of the Georgia Real Estate Commission (Ga.R. & Reg. 520-1-.10) is specified in Par. 9.

Equal Housing Opportunity Policy.   The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia.  It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies and procedures  and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability.  The Resident must request and obtain permission from the owner or management for any accommodation or modification prior to implementing the same.  In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident,  unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications.  A Resident or occupant with a demonstrated disability is allowed to have an assistance animal to assist with the person's disability.  A disabled Resident or occupant is allowed to  have an assistance animal which has not been trained as a service animal unless the animal has a history of dangerous, vicious, or unsafe behavior.  If the nature of the disability is not obvious or apparent or the manner in which the animal will provide assistance is not clear, Management has the right to request additional information regarding how the animal will assist with the resident's disability.  The Resident does not have an absolute right to the specific accommodation or modification requested, and Management has the right to offer an substitute or alternate accommodation or modification with conditions that will provide adequate assurance for the safety, health, and well being of other Residents, occupants, social guests, invitees, and Management employees.  No Additional Rent, Non-refundable Fee, or Animal Security Deposit is required from Residents or occupants who are  disabled and have an approved service or assistance animal; however, the Resident is responsible for any and all damages and cleaning fees exceeding  normal wear and tear caused by such animal.

10.   Utilities Are Resident's Responsibility.   Resident is responsible for payment of all natural gas, electricity, water and sewer, telephone, cable, satellite or other utilities and services to the apartment unless specified otherwise in Paragraph 34 or in a utility addendum which is made a part of this lease.  Resident gives Management the right to select any utility provider and change the same without notice.  Resident shall promptly establish all utility and service accounts to be paid by Resident in his name at the start of the lease and shall not allow water and sewer, electricity, or natural gas to be  shut off or billed to Management.  Resident shall promptly pay any billing for utilities or other services charged to Management upon notification.  Resident's failure to pay all utility services or to establish an account with a utility provider is a material breach of the lease for which Management has the right to terminate the right of occupancy or lease.

   **    Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider).  Resident (the Tenant)  authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer, to authorize  the natural gas marketer to obtain credit information on the Resident, if required by the marketer, and to enroll the Resident on the  marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is  eligible.  Resident acknowledges that Management may have a business relationship with the natural gas marketer that may provide for a financial  or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

11.   Fire and Other Casualty.   This lease will end if the apartment is uninhabitable due to fire as long as the fire was not caused by or the  responsibility of Resident or Resident's occupants, family, or social guests.  If Resident or his occupants, family, or social guests were responsible for the fire and  the premises are uninhabitable, then Resident must vacate the apartment and will still remain liable for the rent and damages.

Management shall have the right to terminate the occupancy or lease of Resident if Resident or Resident's occupants, family, social guests, or  invitees caused or were responsible for causing a fire to the apartment or any portion of the apartment community.  Resident has no right to transfer to  another apartment in the community or to remain in the apartment community if Resident or Resident's occupants, family, social guests, or invitees  were responsible for or caused the fire.  Resident may be eligible for transfer to another apartment in the apartment community if the Resident is qualified,  there is a suitable apartment available, and Resident or Resident's occupants, family, social guests, and invitees did not cause the fire.

Resident is responsible for the cost of repair, replacement cost, and all expenses required to repair or replace the equipment, building, or  property damaged by a fire which Resident or Resident's occupants, family, social guests, or invitees caused.  Resident is liable to and shall indemnify, defend  and hold harmless Management and the owner for any damages or repairs caused by a fire which was caused by Resident or Resident's occupants,  family, social guests, and invitees.

This lease shall end if the premises are destroyed or otherwise rendered uninhabitable due to an Act of God or any other catastrophic event or  casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees.

The Resident shall not continue to occupy an apartment which is rendered uninhabitable due to fire, Act of God, or other catastrophic casualty and  must remove all personal property and return possession to Management.

12.   Hold Over/Trespass.   Resident must promptly vacate the apartment and deliver possession and all keys to Management upon any termination  or non-renewal of this lease. Keys must be physically handed to a representative of Management and may not be left in the apartment or in the overnight  rent drop box at the Management office.  The apartment must be delivered to Management in clean condition and good repair.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

If Resident does not vacate the premises and return possession to Management after termination, non-renewal, or expiration of the lease, then Resident shall pay to Management rent at two (2) times the current rental rate for each day held over past the termination date.

After termination, non-renewal, or expiration of the lease, Resident is a tenant at sufferance.

After vacating the premises based on non-renewal, termination, eviction, or upon receiving a criminal trespass notice under O.C.G.A. § 16-7-21 from Management, Resident shall not return to any portion of the apartment community.  Resident shall not permit entry of any person as his social guest or invitee if notified that his guest's or visitor's presence in the apartment community is subject to criminal trespass under O.C.G.A. § 16-7-21.  Management may terminate the lease or right of possession of any Resident who allows an unauthorized person access to his apartment or the community in violation of this provision or paragraph 14.  Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's right of occupancy of the apartment.

13.    Right of Access.  Management may enter the apartment without notice during reasonable hours to inspect, maintain, and repair the premises.  Management may enter the apartment at any time without notice to prevent injury or damage to persons or property.  Resident authorizes Management to show the apartment to prospective Residents once Resident has given or received a notice of non-renewal or termination.

14.    Resident's  Use of the Apartment  and Conduct.  Resident shall use the apartment and apartment community only for residential purposes and  not for business or commercial purposes.

Resident, all occupants, and Resident's family, social guests, and invitees must comply with all laws.  No portion of the apartment or apartment  community shall be used by Resident or Resident's occupants, family, social guests, or invitees for any disorderly, disruptive, abusive, or unlawful purpose, nor  shall they be used so as to disrupt the quiet enjoyment of any other Resident or their occupants, family, and social guests.  Resident and Resident's  occupants, family, social guests, and invitees shall not commit any crime in the apartment community.

Resident is liable for the conduct of and for any damages exceeding normal wear and tear caused by his family, occupants, social guests, and  invitees.  Resident shall not allow his occupants, family, social guests, and invitees to commit a crime or violation of the lease and addenda and must  take affirmative, corrective action and notify Management of any such violation or misconduct.

The sale, manufacture, distribution, or possession of any illegal drugs in the apartment community is prohibited.

Resident must maintain the apartment in a clean and sanitary condition and must not cause or allow any damages exceeding normal wear and tear  or infestation of vermin, insects, rodents, or other pests.  Noxious or offensive smells are not permitted, and Resident shall be liable for damages  exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, water,  or mold.   Resident shall not leave or dispose of trash, garbage, or other materials in hallways, breezeways, patios, balconies, or common areas of  any portion of the apartment building or community.  Resident shall promptly take trash, garbage, or refuse to the proper dumpster, compactor, or  trash collection area and properly dispose of organic and inorganic material as provided by law and as provided by the community rules.

Resident and Resident's occupants, family, social guests, and invitees shall abide by and follow all community rules and regulations.

Management shall have the right to prohibit smoking of cigarettes, pipes, cigars, or tobacco inside the apartment or any portion of the  apartment community property under its community rules and regulations.  Smoking of tobacco products in the apartment is prohibited unless expressly  authorized and allowed by the community rules and regulations.

Resident shall operate all motor vehicles in a safe and lawful manner in the apartment community.  Resident shall not violate any parking rules and  regulations and shall not exceed 15 mph in any parking lot, street, exit, or entrance of the apartment community.  Resident must park only in  authorized spaces and places and shall not park at any place that obstructs traffic, is unsafe, or is prohibited.  Resident shall not operate, park, or store, any  illegal, unauthorized, or uninsured motor vehicle or equipment on any portion of the apartment community.  Resident shall not abandon a motor vehicle in the  apartment community.

Resident shall not store, keep, or dispose of any substance or material on any portion of the apartment community that is hazardous to the health,  safety, or welfare of any person.  Resident shall not dispose of any batteries, chemicals, environmentally hazardous, or unsafe material in any trash  receptacle, dumpster, compactor, or any portion of the apartment community.

Resident, and Resident's occupants, family, social guests and invitees, shall act and communicate with the apartment owner, Management,  Management employees, Residents, business social guests of Management, and all other persons in a lawful, courteous, and reasonable manner.  Any form of  verbally or physically abusive, intimidating, or aggressive behavior directed at the apartment owner, Management, Management employees, or any other person  is prohibited.  Resident, his social guests and occupants shall not interfere with the daily business operations of the apartment community or job duties  of Management or its employees.  When notified by Management, Resident shall be prohibited from entering or contacting any Management or  corporate office or employee and must conduct all further communications in writing.

Resident shall not distribute petitions, flyers, or solicitation notices to other Residents in any manner other than through lawful use of the United States  mail.  Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about the apartment  owner, Management, Management employees, or the apartment community.

Resident shall not commit waste to the apartment or apartment community and shall not commit any act nor fail to take any action that would endanger  the life, health, safety, welfare or property of any other person in the apartment community.  Resident must allow Management and vendors access to the  apartment for the purpose of making repairs, performing service or maintenance, inspecting, and taking all other action related to the ongoing  business operation of the apartment community.

Resident shall not cause or allow an infestation of bed bugs in the apartment.  Resident shall not bring abandoned or discarded furniture,  clothing, bedding, or other personal property into the apartment as it could introduce an infestation of pests and bed bugs.

Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the apartment or apartment community.   Resident and Resident's occupants, family, social guests, and invitees shall not touch, damage, or trigger any automatic sprinkler head.

Resident and occupants shall not use the internet or cyberspace in any manner to disparage, defame, or injure the business or business reputation of the  apartment owner or Management.  Resident and occupants shall not use, misuse, or appropriate the use of the owner's or Management's  corporate names, logos, slogans, images, photos, internet domain names, service marks, trademarks, copyrights, or trade names.  Resident and occupants shall  not publish, misuse, or use any photos or video of Management employees or the apartment community or signage.  Owner and Management shall be  entitled to injunctive relief and damages for compensation to prevent any unauthorized publication, use or misuse, whether in part or in whole, of the  corporate name, trade name, internet domain name, likeness or identity of owner or Management.  Resident and occupants shall not make, post, or  publish misleading, deceptive, untruthful, groundless, false, or unfair statements or commentary about the apartment community, the Management employees,  the owner, or Management on or to any internet website or domain, internet blog, internet social media, newspaper, magazine, television, radio, or other  news or social media.  Resident is prohibited from making, publishing, stating, or posting any statement or communication that, while partially true, lacks or  fails to disclose other material facts in such a way such as to mislead the listener, viewer, or reader.  Management shall be entitled to terminate the right  of occupancy or lease of any Resident or occupant who violates any portion of this Use and Conduct provision.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

Resident and Resident's occupants, family, social ... sts and invitees shall not store, use, or discharge any fireworks or consumer fireworks in the apartment or apartment community. Fireworks are defined as any combustible or explosive composition or any substance or combination of substances or article prepared for the purpose of producing a visible or audible effect by combustion, explosion, deflagration, detonation, including but not limited to, blank cartridges, firecrackers, torpedoes, skyrockets, bombs, sparklers, roman candles and other combustibles and explosives of like construction.

Violation of this Resident's Use and Conduct provision is a material breach of this lease and constitutes a ground for terminating Resident's lease or right of possession, and Resident will be liable for any rent due through the remainder of the lease or liquidated damages (if applicable) as provided in Paragraph 26.

15.    Property Loss, Insurance, and Crime.  Management and the apartment owner shall not be liable for damage, theft, vandalism, or other loss of any kind to Resident's or his occupant's personal property, unless such is due to Management's negligence or intentional misconduct. Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties.

Resident must purchase a renter's insurance policy that provides liability insurance for negligent or accidental acts and omissions for which the Resident may be liable in causing injury or damage to the owner, Management, or others.

Resident should purchase property insurance for loss of or damage to Resident's own personal property.  Management is not liable for any loss or damages to Resident's personal property due to theft, vandalism, bursting or leaking pipes, fire, windstorm, hail, flooding, rain, lightening, tornadoes, hurricanes, water leakage, snow, ice, running water, or overflow of water or sewage. Management shall not be liable for any injury or damage caused by such occurrences, and Resident agrees to look solely to his insurance carrier for reimbursement of his losses for such events.

Management does not market, advertise, represent, offer, or provide security or law enforcement services which will prevent crime or protect Resident or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for police, emergency, fire , security, or protection services.

Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is not liable to Resident for the criminal acts of other persons. Resident agrees that he or she will not and cannot rely on the existence or absence of  security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their  personal safety at all times. Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.

16.    Lead Based Paint Notification  (LBPN).  If this apartment community was built prior to 1978, the LBPN addendum is incorporated by reference.

17.    Flood Disclosure.  Management states that the apartment has not been damaged in any manner by flooding as defined in O.C.G.A. § 44-7-20 in  3 of the last 5 years unless noted otherwise in Par. 17.

18.    Pets.  No animals or pets of any kind are permitted without a Pet, Service, or Assistive Animal Addendum.  Management may enter the apartment at any time and remove any pet or animal which Management believes to be neglected, distressed, or endangered.  Resident shall be liable for all costs of retrieving, caring for, and boarding of any pet or animal that is abandoned by Resident or removed by Management.  Resident releases Management from liability of any kind when Management acts to retrieve or protect Resident's pets and animals which appear to be neglected, distressed, or  endangered. Please see Par. 9 with respect to Management's policy on service, assistive and convenience animals for person with disabilities.

19.    Indemnification.   Resident agrees to indemnify, defend, and hold harmless the apartment owner and Management for any loss  the  apartment owner or Management incur due to Resident's breach of this agreement or due to the acts and omissions of Resident and Resident's occupants, family, social guests, or invitees.

20.    Failure to Act. Management has the right to insist on strict compliance with the terms of this lease at any time, even if it has previously  delayed acting on Resident's breach of this lease.  Management shall have sole discretion in granting and withholding permission or consent for Resident to perform his or her obligations under this lease in any manner that varies from the contractual requirements.  Management at its option may  condition, modify, or revoke any such permission or consent upon reasonable written notice and insist upon strict compliance with the lease terms.

21.    Fees and Expenses of Litigation.   In a civil action or dispossessory proceeding for breach of this lease, the prevailing party shall be entitled to attorney's fees in the amount of fifteen percent (15%) of the principal and interest owing and all expenses of litigation, including, but not limited to,  court costs and administrative filing fees for evictions.  All sums due from Resident to Managment which are in default shall bear interest at the rate of  twelve percent (12%) per annum.

22.    Notices.  All notices must be written, dated, and signed.  The notice must be given personally or by certified mail, return receipt requested.  Notice shall be sent to Resident at the apartment and to Management at the apartment community business office. See Par. 9 with regard to the proper  address for service of lawsuits.

Resident shall send notices for repairs, service, maintenance, non-renewal, military transfers, and lease termination to the Management/leasing  office located at the apartment community.

Resident shall provide Management with Resident's updated contact and address information and forwarding address at anytime requested during the lease and at the time of vacating the apartment.  Resident shall provide Management with: the address of his or her new residence (where they are  living); the mailing address for returning any security deposit or forwarding any notices or move-out inspection and estimate of damages and cleaning fees  that exceed normal wear and tear; the name, address, and phone number of their employer; the name, address, and phone number of a person or  family member who can provide updated contact information; the Resident's cell phone and e-mails. If Resident fails to provide his or her contact information  and address at the time of vacating; conceals or attempts to conceal his or her address and location; moves from the State of Georgia; or cannot be located  by Management, then the statute of limitation for collecting any account or money owed by Resident shall be tolled until such time as Resident  provides proper notification of his address and other contact information requested.

RESIDENT'S NOTICE OF NON-RENEWAL UNDER PARAGRAPH 6 OR NOTICE OF INTENT TO VACATE AND TERMINATE THE LEASE EARLY  UNDER PARAGRAPH 7 MUST BE IN WRITING AND MUST BE GIVEN SO THAT THE ENDING DATE IS ON THE LAST DAY OF A CALENDAR MONTH.  VERBAL NOTICES ARE NOT EFFECTIVE AND MAY NOT BE RELIED UPON BY RESIDENT UNDER ANY CIRCUMSTANCES. MILITARY SERVICE  MEMBERS MAY GIVE A NOTICE TO TERMINATE AS PROVIDED IN PAR. 7 AT ANY TIME OF THE MONTH.  NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO VERBALLY OR UNILATERALLY WAIVE ANY NOTICE REQUIREMENT, AND RESIDENT MAY NOT RELY ON A VERBAL STATEMENT OF MANAGEMENT THAT PROPER WRITTEN NOTICE IS NOT  NECESSARY.  MANAGEMENT MAY, BUT IS NOT REQUIRED TO, WAIVE THE REQUIREMENT THAT NOTICES BE EFFECTIVE ONLY AS OF THE END OF A CALENDAR MONTH.

23.    Repairs.   Resident accepts the apartment "as is" and in habitable condition suited for residential purposes. Resident accepts full control and responsibility of the apartment leased premises and agrees to maintain the apartment in a clean, safe, and sanitary condition.  Management will  make repairs to the apartment with reasonable promptness  upon receipt of written notice from Resident,  Management's repair obligations under Georgia

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

landlord/tenant law only pertain to the apartment, and not to the common areas of the apartment community. Resident agrees and acknowledges that he or she only leased the apartment and that Resident's occupants, family, and social guests access to amenities and common areas of the apartment community are only a permissive license to use such amenities and common areas.

Resident shall pay as additional rent for any cleaning or damages exceeding normal wear and tear to the premises caused by Resident or caused by Resident's occupants, family, social guests, invitees or licensees of the Resident and occupants that exceed normal wear and tear. Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the leased premises or apartment community, and Resident is responsible for the cost to repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged. Resident is liable to and shall indemnify, defend, and hold harmless Management and the apartment owner for any damages or repairs caused by Resident or Resident's occupants, family, social guests, and invitees. Resident shall promptly pay as additional rent with the next month's rent the costs of any repairs, replacement, or damages caused by Resident or Resident's occupants, family, social guests, or invitees upon issuance of an invoice from Management.

Resident may not alter the interior or exterior structure of the apartment or apartment community in any manner without the express written consent of Management. Please see Par. 9 with regard to Management's policy on disability modification requests.

Resident must promptly report the need for any repairs to Management in writing before Management is obligated to make any repairs. Resident must promptly report any dampness, water leaks, or mold in the apartment to Management. Resident shall properly use the heating, ventilation, and air conditioning (HVAC) system to maintain temperate conditions so as to prevent freezing of water pipes in cold weather and to prevent mold growth or excessive humidity during warm weather. Resident is required to use air conditioning during June, July, August, and September and shall not turn off the air conditioning and open windows for purposes of cooling the apartment. Resident must inspect any fire alarm and fire extinguisher at least once per month to determine whether they are in proper working condition and report to Management the need for any need for repair or replacement. Resident shall promptly notify Management of any damage to or malfunction of any door or window locks or intrusion alarm.

Resident must promptly report any evidence, knowledge, or suspected presence of bed bugs in the apartment and cooperate with Management to allow inspection and treatment of the same. Adjoining or neighboring Residents to an apartment infested with bed bugs must cooperate with Management in inspection and treatment to prevent a possible cross infestation or migration.

24.    Abandonment.    Resident shall not abandon the apartment, Resident's personal property, or motor vehicles. Title to any abandoned property (including, but not limited to, pets or animals) shall vest in Management. Management may store, sell, or dispose of abandoned property without notice.

If Resident abandons the apartment or his or her personal property contained therein, Management shall have the right to re-key, re-enter, and re-let the apartment without filing a dispossessory warrant or obtaining a writ of possession. Management is not required to file a dispossessory proceeding in order to recover an abandoned apartment or to dispose of any abandoned property found in an abandoned apartment. Management shall have sole discretion in determining whether the Resident has abandoned the apartment. Circumstances indicative of an abandonment include, but are not limited to, Resident's unexplained absence or failure to occupy the apartment; the overall appearance and condition of the apartment; Resident's statement that he or she is moving or leaving the apartment community; failure to pay rent or utilities; discontinuance of utility service; failure to respond to Management's notices, communications, or eviction proceedings; or removal of a substantial amount of Resident's personal property.

25.    Attornment, Sale, Foreclosure, Renovation, and Former Employees.    Resident's rights, or, if applicable, his employment with Management, are subordinate to any deed to secure debt, sale, or contract for sale of the property.

In the event the apartment community or any portion or building of the community is foreclosed, sold, placed under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the lease on 30 days' written notice. In the event that Management elects to terminate the occupancy or lease under this provision, then during the 30 day period immediately preceding either the termination date of Resident's occupancy or the termination of the lease, the Resident's rent shall be reduced by fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall owe the full rent due for said 30 day notice period plus hold over rent as provided in paragraph 12.

If Resident is an employee of Management and his or her employment is terminated, then this employee lease shall also terminate, any employee rental discounts shall end, and the employee agrees to vacate the premises if requested. If permitted to stay, the former employee shall pay the current market rate rent as specified by Management at the time employment is terminated.

26. Default by Resident. Resident's violation of this lease or any addenda constitutes a default. Violations constituting a default include, but are not limited to: unauthorized occupants; non-payment of rent; improper non-renewal or termination of the lease as required by paragraphs 6 or 7; abandonment of the apartment as prohibited in paragraph 24; providing false or misleading information in the rental application; failure to pay or continue utility service as required in paragraph 10; allowing unauthorized persons access in violation of paragraph 12; any unauthorized occupants or improper use or conduct in violation of paragraph 14; or causing damages or cleaning in excess of normal wear and tear.

Upon default, Management may terminate Resident's lease or right of possession by giving written notice and re-entering the apartment as provided by law. Notice to cure a default is not required but, if given, shall not waive Management's right to terminate or insist on strict compliance. Resident shall surrender possession of the premises to Management promptly on the effective date of any termination notice, remove all possessions and persons occupying the apartment, return all keys to Management by personally handing them to a Management representative, and restore Management to quiet possession of the leased premises.

Notwithstanding Management's termination due to Resident's default, Resident shall remain liable for all rent, hold-over rent under paragraph 12, liquidated damages (if applicable) as provided below, unpaid utilities, rental concession, lost discounts or pay-backs, damages exceeding normal wear and tear, costs of eviction, attorney's fees and expenses of re-letting incurred by Management as a result of Resident's default.

Management, at its option, may obtain possession of the apartment through a dispossessory proceeding, either with or without first terminating the lease or right of possession. Management, at its option, may also recover possession of an abandoned apartment without filing a dispossessory proceeding by changing the locks and disposing of any abandoned property.

Notwithstanding termination of the lease, commencement of a dispossessory proceeding, issuance of a writ of possession, actual physical eviction, or recovery of the abandoned premises, Resident shall remain liable for all rent accrued through the date on which possession is obtained by Management; rent through the remainder of the lease term or liquidated damages (if applicable) as provided in this paragraph; damages exceeding normal wear and tear; unpaid utilities; rental concession, lost discounts or pay-backs; costs fees, and expenses. Neither issuance of a writ of possession, actual physical eviction, or retaking possession of the apartment shall relieve Resident of liability for rent through the end of the lease term or liquidated damages (if applicable) under this paragraph. All rent, fees, damages and liquidated damages (if applicable) shall be due immediately upon demand for payment.

In the event of a default by Resident, the Resident shall be liable to Management for rent through the remainder of the lease term as follows. Management may either allow the apartment to remain vacant and hold Resident liable for payment of rent through the remaining term of the lease; sue the Resident for breach of the lease and for each installment of rent as it comes due through expiration of the lease; or re-enter the premises as provided by law and re-let the apartment on Resident's behalf while holding the Resident liable for any deficiency between the contract rent and rent received through the remaining term of the lease until the re-letting. Management has the right, but not the obligation, to attempt to re-let the premises on Resident's behalf.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

In the event that Resident has breached or defaulted the lease and failed to terminate the lease properly as provided by law or as provided for in Paragraphs 6 or 7 of this Apartment Rental Contract, then Resident shall be liable to Management for unpaid rent due through the remainder of the lease term under this paragraph (Par. 26), and not as provided in Paragraph 7, and Management is not entitled to collect any termination (cancellation) fee or notice fee.

Liquidated Damages In Lieu of Rent Through the Remainder of the Lease Term. Management shall not be entitled to Liquidated damages unless the Liquidated Damages Addendum has been signed by Management and Resident to indicate that the parties desire to use liquidated damages in determining the amount of rent due through the remainder of the lease term in the event of Resident's default.  In the event the parties have selected liquidated damages for determining Resident's liability due to Resident's breach, then the Liquidated Damages Addendum is incorporated herein by reference, and the parties shall execute the same as a separate addendum.

Management's re-entry to leased premises either under judicial process or by retaking possession after abandonment or surrender shall not relieve Resident of liability for payment of rent through the remainder of the lease term or liquidated damages (if applicable) that landlord is entitled to collect under the terms of this rental agreement.

Management shall have the right to terminate the lease or right of possession of any Resident or occupant of the apartment who is arrested, indicted, charged, or convicted of any felony, crime of violence, or threatened violence; robbery; theft; dishonesty; rape; child molestation; sexual offense; illegal sale, use, or possession of drugs; illegal use or possession of a weapon; stalking; arson; criminal damage to property; vandalism; issuance of bad  checks; fraud; forgery; or any other crime which could adversely affect the health, safety, or welfare of other Residents or Management staff, regardless of whether the offense occurred on or off the apartment community premises and regardless of when the offense occurred.  Management shall have the right to file a dispossessory action and obtain a writ of possession based on the Resident's or occupant's conduct which constitutes a criminal violation without waiting for a criminal adjudication, finding, or decision on the criminal charges.

Management shall have the right to terminate the lease of any Resident whose apartment is found to be infested with bed bugs; have a mold or water intrusion problem; be unfit for habitation; or constitute a hazard to health, safety, or welfare of any person, the apartment, the apartment community or management employees.  Upon such termination, resident must promptly vacate, remove all personal property and possessions, and return possession of the apartment to Management.

Violation of Affordable Housing Eligibility Provisions.  Management shall have the right to terminate the lease or right of occupancy of any resident who is in violation of the eligibility requirements of the applicable LIHTC or affordable housing program or is in violation of the affordable housing provisions of paragraph 33 or any other paragraph of this rental contract or addenda.

Violation of Section 8 Housing Choice Voucher Provisions.  Management shall have the right to terminate the lease or right of possession of any Section 8 Housing Choice Voucher resident for serious or repeated violation of material terms of the lese or any material non-compliance or other  good cause as provided in the U.S. Department of Housing and Urban Development (HUD) Public Housing Occupancy Guidebook and pursuant to 24  CFR 966.4.  A serious or material violation or breach of this rental contract includes, but is not limited to, failure to make rent payments due under the  lease; failure to fulfill household obligations as described in 24 CFR 966.4(f); conviction of drug-related activity for manufacture or production of illegal  drugs; violation of the applicable standard of alcohol abuse; and other criminal activity.  The following are also serious and material violations under a Section  8 Housing Choice Voucher lease: drug-related activity engaged-in either on or off the premises by a resident, member of the resident's household, or  other person under the resident's control; resident's or a member of resident's household use of a drug or a pattern of illegal drug use that interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents; alcohol abuse or a pattern of alcohol abuse that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents; furnishing false or misleading information concerning illegal drug use,  alcohol abuse, or rehabilitation of illegal drug or alcohol abusers; unlawful flight to avoid prosecution, custody, or confinement for a felony (or, where applicable,  a high misdemeanor); violation of a condition of probation or parole imposed under federal or state law; or engagement in criminal activity, regardless of whether the resident or household member was arrested or convicted for such activity and without having to satisfy the standard of proof for a  criminal conviction.

27.    Privacy, Disclosure, and Consent.  Resident agrees that information about him or her that is known to Management or contained in his or her Resident file is not confidential, privileged or private. Resident authorizes Management to disclose any information known or contained in the Resident  file to any law enforcement agencies who request such information either with or without a subpoena; to prospective landlords or lenders who request  such information in connection with approval of any rental application or home purchase; or to persons or parties who make a request for such information  using discovery procedures in a civil action or subpoena in a criminal proceeding.

Resident agrees that the apartment owner and Management shall have the right to provide information from its account and business records to  any Consumer Reporting Agency to be included in the Resident's consumer file and credit history, including, but not limited to, rental history, rental  payments, unpaid balances, and other information.  If the Resident disputes the accuracy of the information provided, the Resident shall notify the  Consumer Reporting Agency and send written notice of the dispute to Management at the address specified in Par. 9. When giving notice to Management of any dispute as to the accuracy of adverse rental information, rental payments, disputed account balance, or other disputed information, Resident agrees to provide his or her correct names on the lease, the apartment number, complete apartment address, dates of occupancy, and clear details as to the  basis of such dispute that the Consumer Reporting Agency and Management will have sufficient information to investigate, evaluate and respond to the dispute.

Resident agrees that Management shall have the right to pursue collection of any sums alleged due from Resident through employment of  independent contractors as collectors and that such sums may be reported to any consumer reporting agency (credit bureau) and shown on Resident's credit  report, Resident agrees that variances or inaccuracies in the amounts submitted for collection or reported to any credit bureaus do not constitute a violation of  any federal or state laws pertaining to reporting or collection of such debts and that the amount alleged due may be amended or corrected at any  time, Resident agrees that Management or any such collector or collection agency is expressly authorized to contact Resident by phone or mail to  notify Resident of the debt or attempt collection of the same and to communicate with third parties regarding the existence of the debt, the location of the Resident, or the Resident's ability to pay the debt.  Resident agrees that Management or any such collector is expressly authorized to obtain a  consumer report (credit report) on Resident and to obtain information on Resident's location and employment in connection with the collection of any  amounts claimed due under this lease.  Management's and collector's rights under this paragraph shall continue and survive independently beyond expiration  or termination of the lease or Resident's occupancy of the apartment.

Resident(s), their occupants, family members, and social guests herby authorize and grant Management, their contractor(s), employee(s), or any  third parties hired by Management, permission to take, use, and publish photographs and/or videos of Resident(s), their occupants and social guests, including but not limited to, their minor children, at events and/or activities in the common areas of the apartment community.  Management is permitted to use  such photographs or video for print, publication, copyright, online social media and video-based marketing materials, as well as any other form of publication  or use at Management's sole discretion.  Resident(s), their occupants and social guests, including their minor children, release and hold harmless  Management from any reasonable expectation of privacy or confidentiality associated with the images and videos taken and used by  Management. Resident(s) and their occupants, family members, and social guests acknowledge and agree they will not receive any type of financial  compensation, ownership or royalties with the taking, use, marketing, or publication of any photographs or videos.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

28.    Definitions.    The term "Resident" includes all .......nts or other persons who signed or are obligated u...... the lease. "His" shall also mean "her" when applicable.  "Resident" refers to the tenant.  The term "Management" may refer to the owner of the apartment community or to the managing agent who is under a Management contract to operate the apartment community on behalf of the owner. The legal ownership entity is different from the  Management entity.   The owner's managing agent may or may not have any ownership interest in the apartment community and may be an entirely  independent contractor which operates the apartment community for the owner for a fee.  "Occupants" are persons who are living in the apartment rental with the Resident and disclosed in the lease but have not signed the lease.  The term "occupants" means persons who did not sign the lease but were  disclosed and authorized to live in the apartment on a full time basis.  Occupants could include family members of the Resident, but is not limited to family  members, and includes roommates or other persons who are authorized to live in the apartment as disclosed in this lease.  "NSF" means checks that are  dishonored or returned by the bank unpaid, and is also referred to as "not sufficient funds." "Skip" means to vacate or abandon the leased premises in violation of this lease, either with or without turning in all keys and either with or without removing all personal property. "Notice period" refers to the length of time  required in paragraph 6 or 7 or any other provision before a notice can take effect. The word "lease" means the Apartment Rental Contract which creates  the relationship of landlord and tenant between the Resident and Management.  "Leased premises" refers to the apartment Resident rented, and is  also referred to as the "premises" or "lease premises," but does not include any of the common areas or other portions of the apartment community  property. The term "leased premises" does not include any portions of the apartment community outside of the apartment rental unit as the Resident only has a permissive license to use the other areas and amenities of the apartment community in conjunction with the rental of the apartment.  "Termination date"  is the date following a notice period or the date on which Resident's lease or right of possession terminates as specified either in a non-renewal notice or  a lease termination notice from Management based on Resident's default.  A "social guest" is any person who is present in the Resident's apartment or  on the apartment community property by express or implied invitation of the Resident or Resident's occupants, other social guests, or family members  and includes anyone temporarily living or visiting Resident.  The term "social guest" includes, but is not limited to, visitors and family members visiting or present in the apartment or apartment community. An "invitee" refers to a business guest or visitor who is present in the apartment or the  apartment community with the express or implied invitation of the Resident for the purpose of conducting or soliciting business with or for the Resident, occupants,  or social guests of the Resident. The "trade name" is the name of the apartment community and is the name or alias under which the legal owner of  record does business and operates the apartment community.  A "default" or "breach" of the lease and addenda means a violation of the lease provisions and gives Management the right to terminate the Resident's occupancy or lease.  "GREC" means the Georgia Real Estate Commission.

29.    Usufruct.    This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate.  This lease is a "usufruct," and not an estate for years.

30.    Entire Agreement.    This lease, any referenced addenda, and any addenda separately signed or referring to the lease or apartment shall  constitute the entire agreement between the parties, and no prior negotiations, representations, or oral statements are binding.  This lease may not be  modified except with the express written consent of Management.  The Resident is legally obligated under the terms and conditions of any addenda which he or  she signed, and the same are part of and incorporated by reference into this lease.

31.    Joint and Several Liability.    Each person, corporation, or roommate who signs this lease or any guarantor under a separate guarantor's  agreement is jointly and severally liable for all rent or other charges which come due.  Management may look to any Resident or guarantor for payment of all or a  part of any obligation due without first suing or attempting to collect from any other responsible party.  Management and the owner or any collection agency  or attorney representing the owner or Management shall have the right to settle in whole or part all or a portion of any debt owed by one Resident  without releasing or waiving its claim for the balance of the debt against another Resident, co-signor, or guarantor.  Settlement or release of one Resident  or Guarantor shall not release the other Resident or Guarantor from liability for the debt owed.

32.    Agency Disclosure.    Management is acting on behalf of the owner of the apartment community in exchange for compensation.

33.    Conditions of Participation in Affordable Housing.    Accuracy of Information Required.    Resident understands and agrees that any  false, fraudulent, inaccurate, concealed, omitted, or misleading information provided during either the initial certification process or during the annual renewal  or re-certification process is a material violation of the rental contract, conditions of occupancy, and participation in the applicable affordable housing  program. A material violation of the terms of this provision; providing false, inaccurate, or misleading information on the Tenant Income Certification forms, the  rental application, any of the verification documentation required in order to qualify for eligibility in the applicable affordable housing program; or any  material violation of the community rules or other applicable addenda is grounds for immediate termination of resident's lease, right of occupancy, or participation in the affordable housing program at this apartment community.  All applicants, providers of income and certification information and documents,  residents, and household occupants must fully, accurately, and truthfully disclose the names and ages of all household members, student status, combined  total household income, and all combined household assets.

Resident understands and agrees that if the combined family household income or household assets exceed the maximum limits imposed under  the applicable affordable housing program that the application must be denied; that the rental contract or right of occupancy must be terminated; that the  resident must relocate to another apartment which may be subject to increased market rate or non-LIHTC rent; or that the resident must cooperate in correcting mistakes or signing any requested documentation that management deems reasonable or necessary for continued compliance with the  laws and regulations applicable to the particular affordable housing program.  Resident acknowledges and agrees that the rental application and  any information supplied to management or any misrepresentations, omissions, or concealment of information made to induce management to lease  an apartment for occupancy under an LIHTC or affordable housing program are incorporated herein constitutes a substantial and material part of this  rental contract.

Future Requests for Information.  Within seven (7) days of management's request, resident agrees to cooperate in providing information regarding  annual income and household assets for continued eligibility in the affordable housing program, including, but not limited to, requests by management of the apartment community or applicable state housing agency or federal governing authority, even if the resident has previously supplied such  information recently or within the last twelve (12) months.  Such requests for additional or supplemental verification and compliance information may be made  by management or the owner at any time during the rental contract term or renewal term.

Resident's refusal to answer or provide accurate information in response to requests for supplemental or additional information is a substantial or  material violation of the rental contract, and resident can be evicted for material non-compliance.  Resident's failure to comply with any request  for supplemental or additional information regarding income, household assets, or other qualifying information may result in termination of this rental  contract, resident's right of occupancy, or resident's eligibility to participate in the affordable housing program without the necessity or requirement of  further requests or warnings for the consequences of resident's refusal to provide the requested information and providing it accurately.

Student Status.  Resident represents that he or she has fully, accurately, and truthfully disclosed whether he, she, or any occupant of the household is a student and acknowledges that eligibility for occupancy is dependent on whether or not resident and all occupants of the household are students  during any part of the year.  Resident agrees to notify management promptly of any changes in the occupants residing in the household or if there are  any changes in the student status of any resident or occupant of the household occupying the apartment, including, but not limited to, replacement residents or occupants; starting or stopping school or college; increasing from part-time to full-time student status; or reduction from full-time to part-time student  status. This provision is applicable to any household resident's or occupant's educational level in either high school, college, or other post-secondary school  or educational training.  The failure to disclose a change of educational or student status is a substantial and material violation of this rental contract, and

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved

resident can be evicted or relocated to another apartment for material breach of this lease. Any failure to disclose any change in student or educational status of any resident or occupant of the household may result in termination of the resident's rental contract, right of occupancy, or eligibility to participate in the affordable housing program without the requirement or necessity of any further request or warning of the consequences of resident's refusal to cooperate in fully, accurately, and truthfully providing the necessary or requested educational information. Resident agrees to relocate, if requested, to another apartment designated as a market rate apartment in the same or a different building and that management may increase the rent to market rate rent if resident is ineligible for continued participation in the affordable housing program because of a change in student or educational status.

Section 8 or Housing Choice Voucher Program.  Resident acknowledges and agrees that even though he or she may be a participant in the Section 8 federal housing program or the holder of a voucher or certificate of eligibility in that federal program that participation in that program does not automatically qualify him or her for occupancy in an LIHTC or other affordable housing apartment.  The maximum allowable income and household assets limits for eligibility and occupancy of an LIHTC apartment may be lower than the maximum allowable income and household asset limits for the Section 8  Housing Choice Voucher Program and may result in disqualification of the applicant or resident for housing at this apartment community, depending on the nature and requirements of the applicable affordable housing program. Any such Section 8 Housing Choice Voucher applicant or resident agrees that his or her occupancy must be approved by the Public Housing Authority under a Housing Assistance Program agreement and that other terms and conditions applicable to the Section 8 Housing Choice Program.

Cooperation with Management to Take Corrective Action.  Resident agrees to cooperate with owner in taking any corrective action management or the owner deems necessary or desirable with respect to any mistake or act that could result in loss of tax credits or other violations of applicable federal or state law or violation of applicable rules, regulations, interpretive guidances, or compliance directives from any state or federal housing agency with administrative or oversight jurisdiction to administer affordable housing programs.  Such required corrective action includes, but is not limited to, re-locating to another apartment; loss of eligibility for LIHTC capped rent to market rate rent; signing or re-signing missing, supplemental or corrective documents;  or or producing documentation to establish or supplement household income, assets, size, or student status. Resident agrees that upon discovering any overpayment of rent, utility allowance, or other charges, owner shall have the right to either rebate the overpayment or apply a credit to future rent for such overpayments as an appropriate corrective action.

Recertification.  Resident acknowledges that the LIHTC Program and other affordable housing programs require an annual recertification of eligibility. Resident must cooperate with owner in completing the recertification process.  When requested, resident shall attend an interview with management to determine continued program eligibility; provide sources and documentation to verify all income, assets, and other eligibility information; and sign a new Tenant Income Certification form.  It is the resident's responsibility to provide all necessary information so that management may perform recertification. Continued occupancy is conditioned upon continued eligibility under the federal LIHTC Program and other affordable housing requirements.  The resident's next annual recertification must be completed by the date specified in owner's notice.  Management will contact the resident prior to recertification date in order to begin processing the necessary paperwork.  The resident must fully cooperate and provide all necessary information to expedite this process.  Failure to comply with recertification requirements is a substantial and material breach of the terms of this rental contract and  may result in non-renewal or termination of the resident's lease or right of occupancy or the resident's eviction from the unit.

Increase in Household Income.  A household of any LIHTC or affordable housing resident will be considered "over income" for rent  determination purposes if the combined household exceeds one hundred forty percent (140%) of the applicable income limit as governed by the LIHTC Program.  If the household's income increases above one hundred forty percent (140%) of the applicable income limit, management, upon 30 days notice, may  increase the household's rent to the applicable market rate.  This provision shall apply only if the building contains mixed LIHTC and non-LIHTC units.  If applicable, management shall also have the right to relocate the LIHTC resident to a non-LIHTC apartment at market rate or otherwise designate the current apartment a market rate unit.

No Unauthorized Residents.  Resident agrees not to permit individuals other than those listed on the rental application or Tenant Income Certification (TIC) form to occupy or reside in the apartment without first obtaining owner's prior written approval.  No person may occupy or live in an LIHTC apartment or affordable housing who is not expressly authorized by owner.  Corporate rentals of LIHTC apartments is not permitted, and the apartment may not be used for transient purposes of any kind.  Only the individuals or persons who are eligible and approved f or occupancy may occupy the apartment  and must sign the rental contract if they are over the age of majority.

Live-In Aide Approval.  Resident shall not permit any live-in aide to reside in the apartment without the prior written approval of management.  A live-in aide for the resident's household will not be approved unless: the resident verifies to the management that a member of the resident's household  requires the services of a live-in aide; the resident properly verifies to the management that the person providing live-in aide services is essential to the care and well-being of the household member and would not be living in the unit except to provide the support services; and the resident and live-in aide  have signed an agreement with management approving the proposed live-in aide.

Cooperation with Management.  If management elects to transfer resident to another unit, resident agrees to cooperate with management by providing information, completing documentation, and/or participating in interviews. Transfer Contingent on Resident's Cooperation.  If resident fails to cooperate  with management after management grants resident's transfer request, management may rescind its approval and deny the request.

Savings Provision.  The parties acknowledge that compliance with the LIHTC and other affordable housing programs is complex and can result in conflicts between the contractual provisions of this addendum, the federal and state laws and regulations governing those programs, and many  other aspects of compliance.  To the extent any provision in this addendum conflicts with the requirements of the LIHTC or other affordable housing  program, this addendum shall be interpreted and construed in harmony with the provisions of Internal Revenue Code and regulations and other provisions of any applicable affordable housing program so as to carry out the effect and intent of such laws and regulations and to prevent a forfeiture or loss of tax credit status.  In the event any court determines that any provisions of this addendum are found to be unenforceable, the undersigned parties agree that the court shall interpret the parties' rights and obligations in a manner such as to uphold the validity and preservation of the managements' tax credit status or participation in such affordable housing program, even if it requires termination of the resident's lease or occupancy in order to insure  continued compliance with such programs.  If required by a state housing agency under a land use restriction agreement or as a condition for participation in  any affordable housing program or if otherwise required by any other state or federal law applicable to such affordable housing programs, management  agrees that non-renewal of LIHTC or affordable housing leases shall be for good cause.

34.  Know Your Neighbors.  Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside. You may access that index in order to determine whether any such individuals live in proximity to a certain location. The public may access the internet to view all sex offenders registered in Georgia. The Statewide Sex Offender  Register can be obtained through the Internet at http://gbi.georgia.gov/georgia-sex-offender-registry.  The public may also contact the local Sheriff to to view a list of the sex offenders listed in their county.

35.  Special Stipulations.  Any special stipulations specified in Par. 35 shall control and supersede and control over conflicting provisions in the text of this lease.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301-AF
All Rights Reserved



# Resident Ledger

|  |  |
|---|---|
| | Date: 09/07/2017 |
| | Resident Code: t2036237 |
| | Property: 80040 |
| | Unit: 03-3211 |
| **Kevin Adrien and** | Status: Current |
| **Jeslyn Adrien** | |
| **3211 Elena way** | Rent: $1,003.00 |
| **Woodstock, GA, 30188** | Deposit: |
| | Move In Date: 05/25/2016 |
| | Move Out Date: 01/01/0001 |
| | Due Day: 1 |
| | Tel Num(Office): |
| | Tel Num(Home): (404) 808-0788 |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | 10.00 | 0.00 | 10.00 |
| 05/01/17 | Sewer Usage From 03-01-2017 to 03-31-2017 | 5.27 | 0.00 | 15.27 |
| 05/01/17 | Water Usage From 03-01-2017 to 03-31-2017 | 33.07 | 0.00 | 48.34 |
| 05/01/17 | RENTAL INCOME (05/2017) | 993.00 | 0.00 | 1,041.34 |
| 05/01/17 | RENTAL INCOME | (993.00) | 0.00 | 48.34 |
| 05/01/17 | RENTAL INCOME | 1,003.00 | 0.00 | 1,051.34 |
| 05/06/17 | LATE FEES, 10% of $993.00 | 99.30 | 0.00 | 1,150.64 |
| 05/11/17 | LEGAL FEES | 200.00 | 0.00 | 1,350.64 |
| 06/01/17 | Sewer Usage From 04-01-2017 to 04-30-2017 | 5.87 | 0.00 | 1,356.51 |
| 06/01/17 | Water Usage From 04-01-2017 to 04-30-2017 | 33.54 | 0.00 | 1,390.05 |
| 06/01/17 | RENTAL INCOME (06/2017) | 1,003.00 | 0.00 | 2,393.05 |
| 06/05/17 | 17-590385003 | 0.00 | 1,000.00 | 1,393.05 |
| 06/05/17 | 17-590385004 | 0.00 | 350.64 | 1,042.41 |
| 06/06/17 | LATE FEES, 10% of $1003.00 | 100.30 | 0.00 | 1,142.71 |
| 06/16/17 | 17-601800036 | 0.00 | 500.00 | 642.71 |
| 06/16/17 | 17-602800035 | 0.00 | 500.00 | 142.71 |
| 06/16/17 | 17-602800037 | 0.00 | 142.71 | 0.00 |
| 06/27/17 | Filed a Writ | 34.00 | 0.00 | 34.00 |
| 07/01/17 | Sewer Usage From 05-01-2017 to 05-31-2017 | 3.70 | 0.00 | 37.70 |
| 07/01/17 | Water Usage From 05-01-2017 to 05-31-2017 | 31.99 | 0.00 | 69.69 |
| 07/01/17 | RENTAL INCOME (07/2017) | 1,003.00 | 0.00 | 1,072.69 |
| 07/06/17 | LATE FEES, 10% of $1003.00 | 100.30 | 0.00 | 1,172.99 |
| 07/14/17 | 17-619652265 | 0.00 | 500.00 | 672.99 |
| 07/14/17 | 17-619652266 | 0.00 | 500.00 | 172.99 |
| 07/14/17 | 17-619652267 | 0.00 | 172.99 | 0.00 |
| 07/27/17 | LEGAL FEES | 150.00 | 0.00 | 150.00 |
| 08/01/17 | Sewer Usage From 06-01-2017 to 06-30-2017 | 7.37 | 0.00 | 157.37 |
| 08/01/17 | Water Usage From 06-01-2017 to 06-30-2017 | 34.77 | 0.00 | 192.14 |
| 08/01/17 | RENTAL INCOME (08/2017) | 1,003.00 | 0.00 | 1,195.14 |
| 08/06/17 | LATE FEES, 10% of $1003.00 | 100.30 | 0.00 | 1,295.44 |
| 08/11/17 | LEGAL FEES | 200.00 | 0.00 | 1,495.44 |
| 09/01/17 | Sewer Usage From 07-01-2017 to 07-31-2017 | 7.37 | 0.00 | 1,502.81 |
| 09/01/17 | Water Usage From 07-01-2017 to 07-31-2017 | 34.77 | 0.00 | 1,537.58 |
| 09/01/17 | RENTAL INCOME (09/2017) | 1,003.00 | 0.00 | 2,540.58 |
| 09/06/17 | LATE FEES, 10% of $1003.00 | 100.30 | 0.00 | 2,640.88 |

| Current | 30 Days | 60 Days | Over 90 | Current Owed |
|---|---|---|---|---|
| 1,345.44 | 122.45 | 30.28 | 1,142.71 | 2,640.88 |

**Rent and Fees Owed, Ch 13 Bankruptcy # 17-64878-crm, Tenant Kevin Adrien**

**Landlord: AGPM Management, LLC as agent for Ridgewalk Apartments**

| Item | Months post-petitions | Total for post-petition | Months pre-petition | Total for pre-petition | Total post- and pre-petition |
|---|---|---|---|---|---|
| Rent<br>$1003.00 per month pursuant to paragraph 3a of the Lease Agreement | September | $1003.00 | August | $1003.00 | $2006.00 |
| Late fees<br>10% if rent payment or any portion of same received after the fifth day of the month pursuant to paragraph 4 | September | $100.30 | August | $100.30 | $200.60 |
| Sewer and Water Usage<br>$42.14 per month | September | $42.14 | August | $42.14 | $84.28 |
| Totals: | | $1145.44 | | $1145.44 | $2290.88 |